## JAMES SIMPSON

*v.*

FRANCES MAY BOCKIUS and FRANCIS FISCHER KANE, administrator with the will annexed of George G. Mercer, deceased.

[Decided June 6th, 1910.]

1. The doctrine announced by the court of errors and appeals in *Haston* v. *Castner, 31 N. J. Eq. (4 Stew.) 607*, must be accepted as the established law of this state.

2. A decedent's creditor is not obliged to await proceedings of an administrator or executor to sell land to pay the decedent's debts by order of the orphans court, nor is he obliged to go into that court to effect such sale. He has a standing in the court of chancery and can file his bill in that court and secure the enforcement of his statutory lien.

3. Whether the administration of the decedent's estate is in a foreign state, or in this state, does not affect the right of a creditor whose debt is charged upon land situate in New Jersey, of which the debtor died seized, to proceed in this court.

4. Neither does the complainant's right to file a bill depend upon the question of the insolvency of the estate of the decedent, the theory being, not that the complainant has exhausted his remedy at law in the probate court, but that he has a statutory lien which he has a right to enforce in the court of chancery, a court which has general jurisdiction for the enforcement of liens.

On demurrer.

*Mr. Joseph Kaighn* and *Messrs. French & Richards,* for the complainant.

*Messrs. Thompson & Cole, contra.*

STEVENSON, V. C.

A demurrer to a former bill filed by the complainant against the defendant Frances May Bockius alone was sustained, and the order sustaining such demurrer dismissed the bill with costs "without prejudice to another bill for the same cause of action."

The former bill sets forth:

That George G. Mercer, now deceased, of the city of Philadelphia, Pennsylvania, on July 11th, 1905, gave his note for $900 to the complainant, the same being for a debt then due, which note was payable December 1st, 1905;

That on February 8th, 1906, the said Mercer conveyed certain lands in Camden county, New Jersey, to the defendant Frances May Bockius, and that such conveyance was made to secure the property for the grantor's use and to protect it from the complainant's debt, and to prevent the complainant from collecting his debt, and for the purpose of defrauding the complainant, and that such conveyance was without consideration, and that the said Mercer up to the time of his death possessed and enjoyed the lands;

That Mercer died in March, 1906, in the city of Philadelphia, having first made his will wherein he appointed one Samuel Fels of Philadelphia executor thereof; and that said Fels neglected and failed to qualify, having been abroad since the death of Mercer, and that no administrator with the will annexed or otherwise has been appointed;

That the complainant has mailed to the address of said Fels in Philadelphia a duly verified claim against the estate of Mercer for the amount of the note.

The present bill was filed four months after the order dismissing the former bill was made, and differs from the former bill in setting forth that the said Samuel Fels "renounced and

refused to qualify" as executor of Mercer, and that Francis Fischer Kane was duly appointed administrator with the will annexed of the said George G. Mercer, deceased, and has duly qualified, &c., and that the complainant caused to be served upon Kane, administrator as aforesaid,

"a duly verified claim against said estate for the amount so due upon said promissory note, which claim was received, approved, allowed and filed by said administrator,"

the allegation concluding that the complainant "has a lien upon said land for said debt."

It may, I think, be safely inferred that the former bill, whether imperfect in other respects or not, was found to be fatally defective because it did not show that the complainant's claim had ever been fixed by judgment or ascertained otherwise in any way. This defect the present bill undertakes to remove by setting forth that subsequent to the dismissal of the former bill the complainant's claim has been presented under oath to the administrator of Mercer and has been by him, "received, approved, allowed and filed." A line of New Jersey decisions of which *Haston* v. *Castner* (*Court of Errors and Appeals, 1879*), *31 N. J. Eq.* (*4 Stew.*) *697*, is the leader, is cited to sustain the proposition that a "creditor whose claim has been allowed by an administrator is in a position to maintain a creditor's bill to set aside a conveyance of land by the intestate which it is alleged was conveyed to defraud creditors." Per Mr. Justice Fort in *Adoue* v. *Spencer, 62 N. J. Eq.* (*17 Dick.*) *782, 783.*

It is unnecessary to take up in detail the objections to the present bill which are set forth as grounds for the demurrer.

The demurrer is joint and several. Objection is made to the joining of the administrator of Mercer as a party. This objection, of course, is only valid on behalf of the administrator. I do not think that it is well taken. Personal representatives are generally proper and sometimes of course necessary parties to a bill charging fraud against the decedent. In this case the administrator has a very great interest in the question, whether the complainant can follow land conveyed away by the deceased in his lifetime and collect his debt out of the same.

The objection which seems to be most relied upon by the defendants is that the bill does not allege that the estate of Mercer is insolvent, or that there is not sufficient personal estate to pay the complainant's claim. It is urged that the right of the complainant to resort to the real estate only arises in case he cannot collect his debt from the personal estate.

Prior to the decision of the court of errors and appeals in *Haston* v. *Castner, supra,* it might have been argued (with what force it is unnecessary to consider) that the lien of general creditors on the lands of their deceased debtor created by the statute, referred to by Chief-Justice Beasley in delivering the opinion of the court of errors and appeals in *Haston* v. *Castner* (at *p. 699*), was enforceable only through proceedings in the orphans court for the sale of lands to pay debts of decedents. This statute, which is now section 81 of the revised Orphans Court act of 1898 (*P. L. 1898 p. 743*), was originally enacted in 1825 as a supplement to the act of 1799, entitled "An act making lands liable to be sold for the payment of debts." *P. L. 1825 p. 121; Elm. Dig. p. 493 § 32.* The act of 1799 (*Elm. Dig. 486; Pat. 369*) provided for the sale of land under execution upon a judgment of a court of law, and also provided for proceedings in the orphans court to sell the lands of deceased persons to pay their debts where the personal estate was insufficient for that purpose. If the original act of 1799 and the supplement thereto down to and including the supplement of 1825, with which we are particularly concerned, all of which laws may conveniently be found in *Elm. Dig. pp. 486-493,* are carefully read, the theory seems tenable that it was not the intention of the supplement of 1825 to create an independent lien on behalf of general creditors of deceased persons enforceable by a suit in equity, but that the intention was to preserve and effectuate the remedies on behalf of creditors against the lands of their deceased debtors already created by statute, or which might thereafter be created by statute involving proceedings in the orphans court. The statute as it originally read and reads to-day provides that the lands of the deceased debtor "shall be and remain liable for the payment" of his debts "for one year after his decease, and may be sold by virtue of an order of the

orphans court," &c. There certainly seems to be some support for the view that the supplement of 1825 was intended to strengthen and effectuate the liability of the lands of a deceased person for the payment of his debts through the proceedings which the statute to which this law of 1825 was a supplement, provided and regulated. The construction which Chief-Justice Beasley put upon the act of 1825, now section 81 of the Orphans Court act of 1898 above cited, does not limit the application of the act to proceedings in the orphans court to sell land to pay the debts of deceased persons, but gives a creditor of a deceased person a lien enforceable for his benefit by suit in the court of chancery. Whether when the case of *Haston* v. *Castner* is closely examined, the interpretation of the act of 1825 by the chief-justice is anything more than a mere dictum, we need not inquire.

The doctrine announced in that case as above set forth has been accepted in many subsequent reported and unreported decisions of this court and the court of errors and appeals, and must be accepted as established law of the state. A creditor is not obliged to await proceedings of an administrator or executor to sell land by order of the orphans court, nor is he obliged to go into that court to effect such sale. He has a standing in the court of chancery and can file his bill and secure the enforcement of his statutory lien.

Whether the complainant's bill in a case like this when properly framed should declare on its face that it is filed not only for the benefit of the complainant, but also for the benefit of the other creditors of the deceased debtor, is another question which I do not pause to consider. In *Haston* v. *Castner, supra,* Chief-Justice Beasley, after a brief discussion of the subject, sustains the right of the creditor to proceed in equity for the enforcement of his statutory lien, and he concludes "that it is a convenient practice and is not open to legal objection for the individual creditor for his own benefit and in behalf of others similarly situated to institute these suits." The reported cases, however, seem to indicate that the suit to enforce this statutory lien may be prosecuted by any creditor on his own behalf alone. Whatever may be the true doctrine it is sufficient for present

purposes to point out that the demurrer does not specify as an objection to the bill that on its face it appears to be filed for the benefit of the complainant alone. If justice requires that the complainant should not be permitted to appropriate the entire proceeds of this land of the decedent Mercer, the court may, at a future stage, stay proceedings until all parties are brought into court whose presence is necessary for the accomplishment of justice. *Van Keuren* v. *McLaughlin, 21 N. J. Eq.* (*6 C. E. Gr.*) *163, 166; Waker* v. *Booraem, 68 N. J. Eq.* (*2 Robb.*) *345, 347; Shepard* v. *N. J. Con., &c., Co., 73 N. J. Eq.* (*3 Buch.*) *578, 585.* It does not appear that there are any other creditors, and if there are none, the defect in the bill which we are considering, if there be such defect, can do no harm.

It may be noted that it does not distinctly appear whether the will of Mercer was proved and the administrator was appointed in Pennsylvania or in New Jersey. Construing the allegations of the bill according to the old maxim *contra proferentem,* perhaps it is a close question which construction should be placed upon the bill. Giving the usual conventional force to the phraseology of the bill, I think it must be held that the deceased debtor is alleged to have been a resident of Pennsylvania when the debt was created, and it distinctly appears that he died in the State of Pennsylvania in less than a year thereafter. There is no legal reason, however, why the original will of the deceased Mercer should not have been proved in the first instance in New Jersey and letters of administration issued there. If the administration of the estate is in Pennsylvania there seems to be a strong additional reason why the New Jersey creditor, whose debt is charged upon land situate in New Jersey, of which the debtor died seized, should not be compelled to go first into a foreign state and seek to enforce the payment of his debt through proceedings in the courts of that state. If, however, we must suppose that the bill sets forth that there is an administrator appointed in New Jersey upon whom the complainant's claim under oath was duly served, and by whom the same was approved, the result in my judgment remains the same under the binding authority of the cases above cited. Although it appears in *Waston* v. *Castner* and in other later

cases that the estate of the decedent was insolvent, that fact is not a part of the *ratio decidendi* of the cases. The cases do not go upon the theory that the complainant has exhausted his remedy at law or in the probate court; the theory is that the complainant, the creditor, has a statutory lien which he has a right to enforce in the court of chancery—a court which has general jurisdiction for the enforcement of liens.

The demurrer will be overruled.